ORIGINAL

# In the United States Court of Federal Claims

No. 17-447C
(Filed: August 29, 2018)

FILED

AUG 29 2018

U.S. COURT OF
FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| PHILIP EMIABATA, d/b/a PHILEMA BROTHERS, | ) ) ) | |
| Plaintiff, | ) ) | Contract; Wrongful Termination for Default Claim; Motion for Summary Judgment, RCFC 56. |
| v. | ) ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) ) | |

Philip Emiabata, Pflugerville, TX, pro se.

Alexander O. Canizares, Trial Attorney, with whom were Chad A. Readler, Acting Assistant Attorney General, Robert E. Kirschman, Jr., Director, Tara K. Hogan, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant. Shoshana O. Epstein, United States Postal Service, Washington, DC, of counsel.

## OPINION

CAMPBELL-SMITH, Judge.

The court has before it defendant's motion for summary judgment, accompanied by an appendix, which is brought pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). See ECF No. 29. Subsequent briefing of the motion includes:  (1) defendant's proposed findings of uncontroverted fact, ECF No. 30; (2) plaintiff's superseded response brief, and exhibits, ECF No. 40; (3) plaintiff's corrected response brief, ECF No. 41; (4) plaintiff's response to defendant's proposed findings of uncontroverted fact, and exhibits, ECF No. 42; and (5) defendant's reply brief, accompanied by a supplemental appendix, ECF No. 43.  For the reasons stated below, defendant's motion is **GRANTED**.

I.     Background

This is the second opinion issued in this case.  Familiarity with Emiabata v. United States, 135 Fed. Cl. 213 (2017) (Emiabata I), which provides the factual context for this dispute, is presumed.  The basic issue now before the court is whether plaintiff, a delivery contractor for the United States Postal Service (USPS), was properly terminated for default on Contract No. HCR 450D3.  Philema Brothers, a sole proprietorship owned by Mr. Philip Emiabata, performed the delivery services under the contract from February 5, 2016 through March 25, 2016.  The contracting officer, Ms. Jewell R. Powell, terminated the contract for default on March 23, 2016, effective close-of-business on March 25, 2016.

Defendant argues that five independent grounds justify the default termination, either solely or in concert, as follows:  (1) Philema Brothers failed to provide adequate proof of insurance; (2) Philema Brothers failed to provide an adequate driving history for Mr. Emiabata; (3) Ms. Powell reasonably concluded that Mr. Emiabata was a hazardous driver; (4) Ms. Powell reasonably concluded that Mr. Emiabata was untrustworthy and unreliable; and (5) Ms. Powell reasonably concluded that Mr. Emiabata had provided false or deceptive information on his security clearance forms.  These asserted grounds for default provide an efficient framework for the analysis of defendant's motion for summary judgment.  The court now turns to the pertinent standard of review.

II.    Standard of Review

A.     Pro Se Litigants

The court acknowledges that Mr. Emiabata is proceeding pro se, and is "not expected to frame issues with the precision of a common law pleading."  Roche v. U.S. Postal Serv., 828 F.2d 1555, 1558 (Fed. Cir. 1987).  Pro se plaintiffs are entitled to a liberal construction of their pleadings.  See Haines v. Kerner, 404 U.S. 519, 520 (1972) (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers").  Accordingly, the court has examined the complaint and plaintiff's briefs thoroughly to discern all of plaintiff's claims and legal arguments.[1]

---

[1]     As defendant notes, Mr. Emiabata previously contested a similar but distinct default termination by the USPS where failure to provide proof of insurance was an issue.  See Emiabata v. United States, 102 Fed. Cl. 787 (2012).  The court found that there was no genuine issue of material fact in that case regarding Mr. Emiabata's failure to meet the contract requirement that he submit adequate proof of insurance to the contracting officer.  Id. at 792.  Thus, even though Mr. Emiabata is proceeding pro se, he has familiarity with at least one of the legal issues presented by defendant's motion.

B.      Motion Brought under RCFC 56

"[S]ummary judgment is a salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action." Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (internal quotations and citations omitted).  The party moving for summary judgment will prevail "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a).  A genuine dispute of material fact is one that could "affect the outcome" of the litigation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." Dairyland Power Coop. v. United States, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citations omitted).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.  A nonmovant will not defeat a motion for summary judgment "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Id. at 249 (citation omitted).  If the evidence of the nonmovant is "merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted).

C.      Wrongful Termination for Default Claims

When a default termination is challenged in this court, the government bears the burden of justifying the termination. E.g., Lisbon Contractors, Inc. v. United States, 828 F.2d 759, 765 (Fed. Cir. 1987).  Once default has been established, plaintiff bears the burden of establishing that the default was excused by fault of the government. See, e.g., Keeter Trading Co. v. United States, 79 Fed. Cl. 243, 253 (2007) ("If the government succeeds in proving default, the plaintiff then must demonstrate 'that the default was excusable under the terms of the contract.'" (quoting Airport Indus. Park, Inc. v. United States, 59 Fed. Cl. 332, 338 (2004))); see also Kennedy v. United States, 164 Ct. Cl. 507, 512 (1964) ("If we hold that [the contractor] defaulted, we must determine whether the default was or was not excusable.").  The wrongful termination for default claim only implicates the contractor's right to obtain termination for convenience costs. See Malone v. United States, 849 F.2d 1441, 1445 (Fed. Cir.) ("If the default was improper, the government is liable for the contractor's termination for convenience costs.") (citation omitted), modified on other grounds, 857 F.2d 787 (Fed. Cir. 1988).

III.   Analysis

Before turning to the evidence submitted by the parties relevant to the default termination, the court considers two threshold issues. First, the government argues that default may be established not only by those problems noted by the agency at the time, but also on the basis of other problems with performance that were not communicated to the contractor and which might have been discovered after the contract was actually terminated. ECF No. 29 at 12-13 (citing cases). Plaintiff argues that establishing default in this manner is improper because it violates his due process rights. ECF No. 41 at 11 (suggesting that "trial, Discovery, interrogations, Evidentiary hearing, deposition et al." are needed to respond to the contracting officer's assertion that Mr. Emiabata was unreliable and untrustworthy). As the court has explained to plaintiff, however, his opposition to defendant's motion for summary judgment must be presented through briefing, and attached documentary evidence, not through a hearing or through discovery.[2] See Order of April 11, 2018, ECF No. 38 at 1 (denying plaintiff's motion to impeach a government witness and motion for an evidentiary hearing). Once the government filed its motion for summary judgment, plaintiff had ample time, through the extensions of time granted by the court and through the acceptance of his filings out of time, to respond to all of the default grounds asserted by the government. See ECF Nos. 32, 38, 39. There was no denial of due process to plaintiff in this matter.

Further, defendant has correctly cited the governing caselaw regarding default terminations. The government may justify its termination for default for all of the reasons noted by the contracting officer at the time and also for any additional valid reason. See, e.g., Kelso v. Kirk Bros. Mech. Contractors, 16 F.3d 1173, 1175 (Fed. Cir. 1994) (citing Joseph Morton Co. v. United States, 757 F.2d 1273, 1277 (Fed. Cir. 1985)); Pots Unlimited, Ltd. v. United States, 600 F.2d 790, 793 (Ct. Cl. 1979) (stating that "it is settled law that a party can justify a termination if there existed at the time an adequate cause, even if then unknown") (citations omitted). Following this binding precedent, the government's justification for the default termination is not limited to the grounds for default enumerated in the contracting officer's letter of March 23, 2016.

---

[2]     To the extent that plaintiff's response brief might be read to include an informal motion to conduct discovery under RCFC 56(d), that motion would necessarily be denied. All of the relevant information as to the contracting officer's rationale for terminating the contract, and for establishing default, has been disclosed by defendant to plaintiff. Inquiry into the contracting officer's subjective mental processes is irrelevant. Further, the most relevant information concerning Mr. Emiabata's reliability and trustworthiness is either in his possession or manifested in the documentary evidence submitted by the parties to the court.

The second threshold issue was raised by plaintiff. Plaintiff argues, somewhat incongruously for a party asserting a contract claim, that no contract was ever formed between the USPS and Philema Brothers. ECF No. 41 at 3, 14-15. As defendant notes in its reply brief, the lack of a contract would necessitate the dismissal of this suit on jurisdictional grounds. ECF No. 43 at 16-17. Plaintiff's "lack of a contract" argument would, if correct, prevent plaintiff from continuing to press his claims before this court, which is not the result he seeks in the remainder of his opposition brief.

As defendant notes, however, the documentary evidence of contract formation is well-established in the record. See ECF No. 43 at 16 (citing ECF No. 29-1 at 7, 70-71). As defendant also notes, plaintiff did not contest the specific allegations of fact made by the government in this regard.[3] Id. at 17. Instead, plaintiff generally argues that Philema Brothers never received a signed copy of the contract, preventing contract formation. ECF No. 41 at 3, 14-15; see also Declaration of Sylvia Emiabata, ECF No. 42-8 at 3 (stating that Philema Brothers demanded a copy of the award letter but never received one).

On the record before the court, there is no reasonable inference that contract formation did not occur, whether or not Philema Brothers received a signed copy of the contract. There is no dispute that Mr. Emiabata signed a copy of the contract, which was submitted to the contracting officer for approval. There is also no dispute that Ms. Powell signed that contract, and a notice of acceptance, on January 8, 2016. It is undisputed that contract performance began on February 5, 2016, and that Philema Brothers received payments for some amount of performance on the contract. Thus, there is no genuine issue of material fact as to contract formation here, and the parties are bound by that contract and its terms. The court turns next to the government's justification of the default termination.

---

[3]    Plaintiff did not follow the instructions given by the court regarding plaintiff's response to the government's proposed findings of uncontroverted fact. See Emiabata I, 113 Fed. Cl. at 221 (requiring specific agreement or disagreement with each of defendant's numbered paragraphs containing proposed findings of uncontroverted fact); Order of May 3, 2018, ECF No. 39 at 2-3 (noting that plaintiff did not tether his response brief, ECF No. 42, to defendant's numbered paragraphs containing proposed findings of uncontroverted fact). Instead, plaintiff ignored these instructions and crafted his own factual allegations which obliquely addressed, perhaps, some of the government's proposed findings of uncontroverted fact, although the disorganization and incoherence of this document were of little assistance to the court in the identification of the disputes of fact in this case. See ECF No. 42 at 14 (explaining that plaintiff globally responded to defendant's numbered paragraphs 4-47, rather than stating his disagreement or agreement with each specific proposed finding of uncontroverted fact, paragraph by paragraph).

A.    Proof of Insurance

The parties present two different chronologies regarding the insurance documentation submitted by Philema Brothers to the USPS in its attempt to satisfy that material requirement of the contract.  The USPS relies on its contract file and the declaration of two USPS employees, whereas plaintiff relies on its records and the declaration of Ms. Sylvia Emiabata, who describes herself as "do[ing] the paper work" for Philema Brothers.  ECF No. 42-8 at 1.  Having reviewed the documents and the declarations submitted by the parties, the court concludes that the only chronology of events that can reasonably be inferred from the record before the court is the one presented by the USPS.  Further, even if the chronology of events presented by plaintiff could be credited, despite its lack of documentary support, that chronology also shows that Philema Brothers was in default for failure to present adequate proof of insurance.

According to the USPS, Philema Brothers submitted insurance documentation in December 2015 which was defective because it did not confirm that payment had been made on the insurance contract, and which was redacted to obscure the name of the driver insured under the contract.  ECF No. 29-1 at 108, 117-20.  These documents, a redacted application for insurance and a temporary insurance card, contain a date stamp of December 16, 2015, from a facsimile server.  Id. at 117-20.  Ms. Emiabata's declaration states that insurance documentation was provided to the USPS, by email, on December 16, 2015, at 3:39 PM.  ECF No. 42-8 at 2.  According to Ms. Belle Gentry, a Transportation and Supply Management Specialist for the USPS, Philema Brothers' first attempt to satisfy the proof of insurance requirement, submitted in December 2015, was ineffective.  ECF No. 29 at 15; ECF No. 29-1 at 107-08.

Subsequently, according to the USPS, additional insurance documentation, with the same insurance contract number and same December 2015 to December 2016 coverage period, was submitted by Philema Brothers.  ECF No. 29-1 at 107-08, 122-26.  Some of these document pages contain the same facsimile date stamp of December 16, 2015, see id. at 125-26, and had been previously submitted, but other pages, including the insurance card (no longer temporary), do not have the same date stamp, see id. at 122-24.  Comparing Philema Brothers' two insurance documentation submissions in the USPS contract file, it is apparent that all of the insurance coverage documents therein reference a driver other than Mr. Emiabata.  Compare id. at 117 (redacting the driver name but not the birth year of 1963), with id. at 118 (showing Mr. Emiabata's birth year as 1960), with id. at 122 (showing a driver name of Roland Hunter), and id. at 126 (showing Mr. Emiabata's birth year of 1960).

The USPS cited the lack of adequate proof of insurance as a ground for default.  ECF No. 29-1 at 13.  The contracting officer had been informed by Ms. Gentry that the contract file did not contain adequate proof of insurance.  Id.  A specific flaw in those insurance documents noted by the USPS was the fact that the insured driver on these

forms was not Mr. Emiabata, the only driver for whom security clearance paperwork had been submitted, and one of only two drivers (Philip and Sylvia Emiabata) identified by Philema Brothers as drivers in its bid for the delivery contract. Id. at 8, 73, 107-08. Thus, when either or both of the insurance document packets received from Philema Brothers are considered, defendant concludes that the proof of insurance was inadequate because the insured driver was not Mr. Emiabata who was the actual operator of the truck for the contract services. ECF No. 43 at 7-10.

Plaintiff's chronology of events is much less detailed and contains internal contradictions. See ECF No. 41 at 2 (referencing a "FAX TO . . . Ms. Gentry on December 16, 2015"); id. (referencing an email to Ms. Gentry sent by Progressive Insurance on December 17, 2015); ECF No. 42-8 at 2 (declaration by Ms. Sylvia Emiabata that Philema Brothers sent Ms. Gentry an email at 3:39 PM on December 16, 2015 containing insurance documentation). In essence, plaintiff suggests that its December 2015 communications with the USPS contained sufficient proof of insurance. It is clear that plaintiff is referencing the same insurance contract as defendant, because plaintiff identifies the insurance contract by contract number and coverage dates. Compare ECF No. 41 at 3 (citing ECF No. 40-10 at 2-6), with ECF No. 29-1 at 117-20, 122-26.

In support of plaintiff's argument that Philema Brothers' proof of insurance was adequate, plaintiff proffers an exhibit which comprises a redacted Philema Brothers' email dated December 16, 2015, ECF No. 40-10 at 1, along with that email's purported attachment, ECF No. 40-10 at 2-6, which is a duplicate of the insurance documentation that the USPS asserts was received later, not on December 16, 2015, see ECF No. 29-1 at 122-26. The court notes that defendant has included in its supplemental appendix an unredacted copy of the same Philema Brothers' email, date and time stamped December 16, 2015 at 3:39 PM, along with a different attachment, including the temporary insurance card and a more heavily redacted page of the insurance application discussed above. See ECF No. 43-1 at 23-25. The email and its purported attachment in defendant's supplemental appendix are linked by the facsimile server pagination of a letter sent by Mr. Emiabata to the USPS, whereas the redacted email and its purported attachment in plaintiff's exhibit submitted to the court are not.

The court agrees with defendant's observation that there are puzzling discrepancies in the documents that have been submitted by Philema Brothers to the USPS and this court, whether the discrepancies relate to multiple layers of redactions obscuring information or email attachments which exist in multiple (and quite different) versions. ECF No. 43 at 9 & n.4. These discrepancies detract from the reasonable inferences that can be drawn from plaintiff's chronology of its insurance documentation submissions. Similarly, plaintiff's reference to a December 17, 2015 email from Progressive Insurance to Ms. Gentry, ECF No. 41 at 2; ECF No. 42 at 3, is not supported by plaintiff's exhibit, which only presents the December 16, 2015 email from Philema

Brothers to Ms. Gentry, ECF No. 40-10 at 1. The court finds that plaintiff's chronology of events cannot be reasonably inferred from the declaration and other exhibits presented in support of that chronology. Although the court credits Ms. Emiabata's sworn declaration that insurance documentation, of some type, was submitted to Ms. Gentry on December 16, 2015 as an attachment to an email, ECF No. 42-8 at 2, it is not reasonable to infer that the contents of that attachment are anything other than the documents in the contract files maintained by Ms. Gentry. See, e.g., Butler v. Principi, 244 F.3d 1337, 1340 (Fed. Cir. 2001) (noting that a presumption of regularity attaches to agency records unless these records are contradicted by clear evidence) (citations omitted).

In the end, however, the parties' dispute as to chronology is immaterial, because the purported email attachment relied upon by plaintiff confirms that all of the insurance documentation provided by Philema Brothers, whether in December 2015 or at some later time, was inadequate. There was no proof of insurance that would cover Philip or Sylvia Emiabata as drivers performing contract services. The contracting officer reasonably decided that Philema Brothers was in default because its insurance documentation offered no proof of the requisite protection of the interests of the USPS.

Further, plaintiff has not pointed to any government action which would excuse this default. Plaintiff's wrongful termination claim fails for this reason, even if no other ground for default existed. For the sake of completeness, the court will now turn to each of the other grounds for default asserted by defendant.

B.     Motor Vehicle Record (MVR)

The parties agree that Philema Brothers was required by the contract to submit a five-year driving record (also referred to as an MVR) for Mr. Emiabata to the USPS, and that this document could not have an issue date that was more than 30 days before the MVR was provided to the USPS. The parties' agreement ends there. The court begins with defendant's evidence that no MVR for Mr. Emiabata was ever submitted to the USPS.

Relying on its contract file and the declarations of two USPS employees, defendant contends that Philema Brothers was repeatedly advised that the USPS required plaintiff to submit Mr. Emiabata's MVR, but Mr. Emiabata's MVR was never submitted. ECF No. 29 at 17; ECF No. 29-1 at 97-98, 101-02, 106, 108. The requests for an MVR were made both orally and in writing in December 2015, January 2016, and March 2016. Id. No MVR is among the documents supplied to the court by the USPS; nor is any such document among the exhibits submitted by plaintiff.

Plaintiff, on the other hand, contends that a valid MVR for Mr. Emiabata was submitted to the USPS. Plaintiff's corrected response brief asserts that "Plaintiff gave . . . a driving history as required by the contract and specifically directed by USPS." ECF

No. 41 at 2. According to plaintiff, an initial MVR was submitted on December 16, 2015, as an attachment to the 3:39 PM email, although it was not valid because of the requirement for an MVR dated within the previous 30 days. ECF No. 42 at 8-9. Although other purported elements of the attachment to the December 16, 2015 email are among plaintiff's exhibits, the invalid MVR is not among them.

According to plaintiff, another MVR, allegedly a valid one, was then submitted to the USPS in response to a March 10, 2016 letter from Ms. Virgena Wilson, a Network Specialist for the USPS, who demanded that missing documentation be provided. Id. at 9. According to Ms. Emiabata's declaration, delivery of this MVR was made on March 14, 2016 to "one Tom" at the gate of the postal facility, and this "Tom" later confirmed, by telephone, that he was going to give the MVR to Ms. Wilson. ECF No. 42-8 at 5. No documentary evidence of the second MVR, or of the transaction that obtained the MVR from the State of Texas, was supplied to the court.

As defendant observes, Ms. Emiabata's declaration as to the MVR issue is not supported by any written documentation. The court notes, too, that none of the versions of the December 16, 2015 email that are in the record list Mr. Emiabata's MVR as being included in the attachment to that email, although four other types of documents are specifically identified as being included in the 11-page attachment. See ECF No. 40-10 at 1; ECF No. 42 (asserting that the attachment to the December 16, 2015 email included eleven pages); ECF No. 43-1 at 23. Further, none of the versions of the attachments to that email include an invalid MVR. See ECF No. 40-10 at 2-6; ECF No. 43-1 at 24-25. Thus, as to the first, invalid MVR, the court has only the bare sworn assertion from Ms. Emiabata that an invalid MVR was attached to the December 16, 2015 email. ECF No. 42-8 at 2.

As to the submission of a valid MVR, plaintiff has submitted two types of evidence. First, there is Ms. Emiabata's sworn statement that a valid MVR was delivered to "Tom" on March 14, 2016, and that "Tom" later confirmed, over the telephone, that he was going to provide the valid MVR to Ms. Wilson. Id. at 5. This alleged delivery is not supported by a copy of the MVR allegedly delivered to the USPS.

Second, there is a March 25, 2016 letter sent to the contracting officer by Mr. Emiabata which responded to the default termination. ECF No. 40-3 at 1-5. Therein, Mr. Emiabata noted that Ms. Wilson informed him that an MVR was only valid if it was issued within thirty days of its submission to the USPS. Id. at 1. Mr. Emiabata then asserted that "I have ordered [the MVR] and in Texas it takes 2-3 weeks." Id.

Thus, the record before the court includes a contemporaneous document authored by Mr. Emiabata, later submitted by plaintiff to the court as an exhibit supporting his contentions of fact, which states that, as of March 25, 2016, Mr. Emiabata had ordered an MVR from the State of Texas and it would be forthcoming. The record also contains a

sworn statement from Ms. Emiabata that Philema Brothers obtained an MVR from the State of Texas and hand-delivered it on March 14, 2016. Plaintiff elsewhere contends that the March 14, 2016 delivery of the MVR was in response to Ms. Wilson's March 10, 2016 letter. ECF No. 42 at 8-9.

In sum, plaintiff's evidence regarding the submission of an MVR to the USPS is highly contradictory. Either an MVR can be obtained in four days, between March 10, 2016, and March 14, 2016, or it takes two or three weeks. Either the USPS received an MVR on March 14, 2016, or Mr. Emiabata was still waiting for one to be issued by the State of Texas on March 25, 2016. Further, none of the factual allegations regarding the submission of not one but two MVRs are supported by contemporaneous documentation; indeed, these allegations are contradicted by contemporaneous documentation.

These evidentiary conflicts and the total lack of supporting contemporaneous documentation are impossible to reconcile with plaintiff's allegations of fact. The court cannot draw any reasonable inference that a valid MVR was submitted to the USPS before the contract was terminated for default when it considers the totality of the evidence submitted by plaintiff, even when viewing that evidence in the light most favorable to plaintiff. Although the court does not weigh evidence or credibility at this stage of proceedings, plaintiff's evidence is not of sufficient probative value to create a genuine issue of material fact on the MVR issue.

Here, the evidence of default is so one-sided that defendant has justified its default decision in this regard as a matter of law. See, e.g., Anderson, 477 U.S. at 251-52 (noting that a court considering a summary judgment motion may find that the evidence "is so one-sided that one party must prevail as a matter of law"). Nor has plaintiff pointed to any fault on the part of the government which would excuse Philema Brothers' failure to submit a valid MVR for Mr. Emiabata. Because the contracting officer reasonably concluded that plaintiff was in default for failure to submit a valid driving history for Mr. Emiabata, the default termination must be sustained on this ground as well.

C.    Default Based on Mr. Emiabata's Driving History and Statements He Made Regarding His Convictions for Traffic Violations

It is undisputed that Mr. Emiabata was involved in a serious accident in Virginia on April 1, 2014, and that two people died as a result of that accident. ECF No. 30 at 9-10. Mr. Emiabata was convicted of reckless driving in connection with the accident, and was assessed a $2000 fine. ECF No. 29-1 at 139-42. The conviction is dated February 25, 2015. Id. at 141-42. A newspaper article from southwest Virginia that related the details of the accident and Mr. Emiabata's reckless driving conviction came to the attention of Ms. Gentry, and she showed this article to Ms. Powell on March 22, 2016. Id. at 80-81, 109. The contract was terminated for default the next day.

On two security clearance forms in the USPS contract file, one dated September 22, 2015, the other dated March 10, 2016, Mr. Emiabata answered a question regarding his traffic violation convictions within the previous five years. The September 2015 form stated "N/A" for traffic violation convictions within that period, despite the fact that Mr. Emiabata had been convicted of reckless driving in February 2015. ECF No. 29-1 at 76. The March 2016 form noted that he had been charged with reckless driving, and under "action taken," stated "Still under Litigation," despite the fact that Mr. Emiabata had been convicted of reckless driving in February 2015. Id. at 78.

While it is certainly true that the April 1, 2014 accident spawned a number of civil suits involving the estates of deceased persons, Mr. and Mrs. Emiabata, various insurance companies, and the firm that hired Mr. Emiabata's company to deliver the truckload on the date in question, there is absolutely no evidence that, as of March 2016, any post-conviction litigation was ongoing in the Virginia court that convicted Mr. Emiabata of reckless driving. Nor is there any evidence that Mr. Emiabata appealed that reckless driving conviction before March 2016. Thus, the statement on the security clearance form that the charge of reckless driving was "Still under Litigation" was false.

Mr. Emiabata's serious accident, his reckless driving conviction and his false statement on the security clearance form were considered by the contracting officer to give rise to three different types of default under the terms of the contract. The contracting officer considered Mr. Emiabata to be a hazardous driver because he failed to report a reckless driving conviction and "obscured a serious accident." ECF No. 29-1 at 14. Pursuant to the contract's terms, the contractor may be terminated for default if that contractor "allows any employed individual to operate a vehicle in connection with this contract who has a record indicating that it would be hazardous for that individual to do so." Id. at 58. The court finds that Ms. Powell was not unreasonable to consider that Mr. Emiabata was a hazardous driver because he concealed his reckless driving conviction and, by doing so, concealed the facts of his serious accident, from the USPS. Default termination is justified on this ground.

Similarly, the contract terms permit termination for default if the contracting officer finds that the contractor is not reliable or trustworthy. Id. Ms. Powell noted Mr. Emiabata's false answer on the security clearance forms, as well as his failure to submit driving records and adequate proof of insurance, and concluded that he was not a reliable or trustworthy contractor. Id. at 14-15. The court finds that Ms. Powell's conclusion in this regard is not unreasonable, and that the default termination was justified on this ground as well.

Finally, Ms. Powell cited a policy which allows the USPS to deny access to the mail, and to deny an application for a security clearance, when "[i]ntentional false statements, deception, or fraud [are present] in an application for [a security] clearance." ECF No. 29-1 at 88. Because the contracting officer considered Mr. Emiabata's

statements to be deceptive and misleading, he could not be granted clearance to handle the mail, and no driver other than Mr. Emiabata had been cleared to handle the mail. Id. at 13-14. Because Philema Brothers could not continue to perform the contract services, the contract was terminated for default. Id. at 14. The court finds that Ms. Powell was not unreasonable when she concluded that the statement on the March 10, 2016 security clearance form was, at best, misleading and deceptive, if not intentionally false, and that this false statement was adequate reason to deny Mr. Emiabata access to the mail and to terminate Philema Brothers' contract for default.

Plaintiff argues that civil litigation in Virginia and Wisconsin justified the notation "Still under Litigation" on his March 10, 2016 security clearance form. ECF No. 42 at 13. The court, however, cannot construe the question as to traffic violation convictions to encompass an inquiry into civil litigation. See ECF No. 29-1 at 78 ("In the Past 5 years, Have You Been Convicted of any Traffic Violations (Other Than Parking) or Currently have Charges Pending?"). Indeed, the security clearance form specifically asked for the name of the court where the traffic violation charge was brought and/or adjudged. Id. Nothing on this form indicates that the focus of the question encompasses civil litigation in other courts as well as the disposition of the traffic violation charge in the court identified by the driver. Viewing the evidence most favorably to Mr. Emiabata, he may not have made an intentionally false statement, but he made a false and misleading statement nonetheless. Because there is no genuine issue of material fact as to these three grounds for default, and because plaintiff has not pointed to any government fault which would excuse these particular grounds for default, the default termination is justified.[4]

IV.    Conclusion

For the reasons stated in this opinion, defendant's motion for summary judgment, ECF No. 29, filed February 5, 2018, is **GRANTED**. The clerk's office is directed to **ENTER** final judgment in favor of defendant **DISMISSING** plaintiff's complaint, with prejudice.

IT IS SO ORDERED.

---

[4]    Plaintiff has sharply criticized the USPS employees who were involved in the administration and termination of the contract. None of plaintiff's factual allegations, however, identify a government fault which could excuse Philema Brothers' failure to provide required documentation to the USPS, or Mr. Emiabata's false statement on his March 10, 2016 security clearance form. Further, plaintiff's contention that the USPS was required to give notice before terminating the contract for default is not supported by the terms of the contract governing default terminations. See ECF No. 29-1 at 52, 58.

PATRICIA CAMPBELL-SMITH
Judge